SEABOARD WORLD AIRWAYS, INC., Plaintiff,

v.

LOCAL 851, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, etc., and Mark Davidoff, Defendants,

National Mediation Board, Additional Defendant on Counterclaim.

No. 79 C 3178.

United States District Court, E. D. New York.

Sept. 5, 1980.

Cahill, Gordon & Reindel by Joel Balsam, New York City, for plaintiff.

Friedlander, Gaines, Cohen, Rosenthal & Rosenberg by Joseph S. Rosenthal, Jeffrey P. Englander, Susan Y. Kunstler, New York City, for defendants Local 851 and Davidoff.

Alice Daniel, Asst. Atty. Gen., Washington, D. C. and Edward R. Korman, U. S. Atty., E. D. New York by Abraham Skoff, Asst. U. S. Atty., Brooklyn, N. Y., R. John Seibert, Brian G. Kennedy, Washington, D. C., for defendant Nat. Mediation Bd.

MEMORANDUM DECISION
AND ORDER

SIFTON, District Judge.

This case is now before the Court on the motion of the National Mediation Board (the "NMB") to dismiss, or alternatively, for summary judgment on the counterclaim.

This action was originally begun by Seaboard World Airlines, Inc. ("Seaboard") seeking a temporary restraining order and preliminary injunction barring the unions from engaging in self—help measures pend-

ing the conclusion of mediation and directing the unions to bargain in good faith. The original defendants were Local 851, International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers of America ("Local 851"); Mark Davidoff, Chief Executive Officer of Local 851; the Airline Pilots Association ("ALPA"); and William Bond, an ALPA official. The action was voluntarily discontinued as to ALPA and William Bond. By stipulation dated December 17, 1979, defendants Local 851 and Davidoff agreed not to engage in any self–help measures pending further developments in their lawsuit. The terms of that stipulation have been extended by the parties until ten days following decision of the present motion.

The present motion is on defendants' counterclaim which seeks an order directing the NMB to declare an impasse and either proffer arbitration or otherwise release the parties from the mediation process. The disposition of the issues before the Court requires an understanding of the Railway Labor Act and its procedures for resolution of disputes. In *In re Int'l Ass'n of Machinists v. National Mediation Board*, 425 F.2d 527, 533–34 (D.C.Cir. 1970), the case on which Local 851 primarily relies, the following description was given:

"The major purpose of Congress in passing the Railway Labor Act was to 'provide the machinery to prevent strikes' and the resulting interruptions of interstate commerce. *Detroit & Toledo Shore Line Ry. Co. v. United Transportation Union*, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (Dec. 9, 1969); *Texas & N.O.R. Co. v. Brotherhood of Ry. & S.S. Clerks*, 281 U.S. 548, 565, 50 S.Ct. 427 [432], 74 L.Ed. 1034 (1930). Its provisions do not spell out limitations on the way in which economic warfare is to be conducted; rather the preventive thrust of the Act is reflected in its concern with use of conciliation, mediation and arbitration to settle labor disputes short of resort to any form of self–help. The Act establishes different machinery for the resolution of 'major' and 'minor' disputes. Minor disputes, like disputes over the interpretation of collective bargaining agreements, are subject to compulsory arbitration by the Boards of Adjustment which the Act creates. Major disputes, those arising out of the effort to create and change collective bargaining agreements, are left to machinery of noncompulsory adjustment under the general supervision of the National Mediation Board.

"This machinery was succinctly described by Justice Harlan in *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 378, 89 S.Ct. 1109, 1115, 22 L.Ed.2d 344:

'The Act provides a detailed framework to facilitate the voluntary settlement of major disputes. A party desiring to effect a change of rates of pay, rules, or working conditions must give advance written notice. [Section] 6. The parties must confer, [Section] 2 Second, and if conference fails to resolve the dispute, either or both may invoke the services of the National Mediation Board, which may also proffer its services *sua sponte* if it finds a labor emergency to exist. [Section] 5 First. If mediation fails, the Board must endeavor to induce the parties to submit the controversy to binding arbitration, which can take place, however, only if both consent. [Sections] 5 First, 7. If arbitration is rejected and the dispute threatens "substantially to interrupt interstate commerce to a degree such as to deprive any section of the country of essential transportation service, the Mediation Board shall notify the President," who may create an emergency board to investigate and report on the dispute. [Section] 10. While the dispute is working its way through these stages, neither party may unilaterally alter the status quo. [Sections] 2 Seventh, 5 First, 6, 10.'

"As the Supreme Court has noted on numerous occasions, these procedures are purposefully long and drawn out. Congress desired to avoid compulsory arbitration concerning the content of collective bargaining agreements, and therefore im-

posed on the parties to a labor dispute the obligation to 'make every reasonable effort' to settle disputes without interruption of interstate commerce. When even the drawn out processes of the Act have failed to result in agreement, Congress has on rare occasions been willing to provide for an interim compulsory settlement. *Brotherhood of Ry. Trainmen v. Akron & B.B. Ry. Co.*, 128 U.S.App.D.C. 59, 385 F.2d 581 (1967), *cert. denied, Brotherhood of Locomotive Firemen, etc.*, 390 U.S. 923, 88 S.Ct. 851, 19 L.Ed.2d 983 (1968).

"The most recent Supreme Court discussion of the machinery for the resolution of major disputes is in Justice Black's opinion for the Court in *Detroit & Toledo Shore Line v. United Transportation Union, supra.* He notes that a 'crucial aspect of the Act was the power given to the parties and the representative of the public to make the exhaustion of the Act's remedies *an almost interminable process.*' 90 S.Ct. at 299. (Emphasis added) This aspect of the Act is 'crucial' because, like the ultimate threat of a strike, it is a force tending to encourage compromise and settlement. The opinion states explicitly:

> '[S]ince disputes usually arise when one party wants to change the status quo without undue delay, the power which the Act gives to the other party to preserve the status quo for a long period will frequently make it worthwhile for the moving party to compromise with the interests of the other side and thus reach agreement without interruption to commerce.' "

The *Machinists* case held that courts have a limited role in this process, to insure that the NMB does not continue mediation "on a basis that is completely and patently arbitrary and for a period that is completely and patently unreasonable." *Id.* at 537. The scope of review "is much more tight and narrow than that resulting from the conventional principles of judicial review." *Id.* at 538. While the court may shed some light on the mediation process, "it must take care to avoid a broad beam of light that destroys a photograph still in process of development." *Id.* a 539.

"The court can do no more than elicit objective facts concerning the conduct of the mediation process . . . and must give the [NMB] the benefit of any doubt as to possibilities why such data might fit into a picture that the Board could genuinely conclude might lead to successful negotiation. The members of this Mediation Board are no more to be called to the courthouse to explain their undisclosed reasons for action than the members of a legislature. The Mediation Board is entitled to as strong a presumption as the legislature that if any state of facts might be supposed that would support its action those facts must be presumed to exist." *Id.* at 540.

\* \* \* \* \* \*

"It may well be that the likelihood of successful mediation is marginal. That success of settlement may lie in the realm of possibility, rather than confident prediction, does not negative the good faith and validity of the Board's effort. The legislature provided procedures purposefully drawn out, and the Board's process may draw on them even to the point that the parties deem them 'almost interminable.'

"What is voluntary about mediation, including mediation under this Act, is the decision to accept or reject the result available from the mediation process. What is involuntary about mediation under this Act is the obligation to engage in the mediation process even though a party is not unreasonable from his point of view in his conviction that further mediation is futile. The court's inquiry cannot go beyond examination of the objective facts and determination thereon whether there is a reasonable possibility of conditions and circumstances (including attitudes and developments), available to the Board, consistent with the objective facts, sufficient to justify the Board's judgment that the possibility of settlement is strong enough to warrant continuation of the

mediation process. However skeptical of success the court may be it cannot obliterate even the slim chance of success that may ensue from exhaustion of the process entrusted by Congress to the Mediation Board." *Id.* at 541.

\* \* \* \* \* \*

"The mediation conducted after filing of the complaint under the shadow of litigation overhanding the Mediation Board is not the kind of mediation envisaged by Congress in [Section] 5 of the Act. Its failure or inconclusiveness does not demonstrate similar lack of success for a mediation process conducted without the artificial pressure and distortion of an overhanging litigation. A party that brings a court action may well acquire a stake in showing that mediation won't work." *Id.* at 542.

In considering the reasonableness of further mediation, the Court should not consider events which took place after the lawsuit was begun in December 1979.

In the *Machinists* case, the District of Columbia Circuit set a very high standard to meet for a party seeking release from mediation. The plaintiff in the *Machinists* case failed to meet the standard set therein; and as far as this Court can determine, no party has been able to meet the burden and win a judicially ordered end to mediation. According to the *Machinists* court, a party seeking release must come forward with objective facts requiring that the judgment of the NMB, that mediation can continue, should be overturned. "Save for such an extraordinary and exceptional situation the District Court should enter judgment dismissing the complaint with prejudice." 425 F.2d at 543.

The counterclaim does not present facts so "extraordinary and exceptional" as to warrant the relief sought. The contract expired in August 1978. Mediation was requested by Seaboard on March 26, 1979, at the behest of Local 851. The dispute was docketed by the NMB on April 18, 1979. A mediator was assigned on June 18, 1979, and mediation began on June 26, 1979. On July 24, 1979, Local 851 requested that me-

diation be terminated and that the NMB proffer arbitration. The period from June 1979 until the beginning of this lawsuit was not so long as to require the conclusion that further mediation is useless. The NMB states in affidavits which are not disputed that similar disputes were settled after longer periods. Nor do the facts presented by Local 851 require the conclusion that the NMB has unreasonably delayed the mediation. Under the standards set in the *Machinists* case, this Court cannot say that there is no possibility that mediation will be successful. It may be that, in view of the fact that Local 851 requested arbitration one month after mediation began, the NMB believes that Local 851 has not yet bargained in good faith in hopes that it can get a quick arbitration. The realization that arbitration is not coming soon may allow meaningful mediation to continue. The long delays up until now are not surprising in view of the statutory scheme which in the words of the Supreme Court was designed to be "almost interminable." Only by dismissing the counterclaim can the process continue the way Congress intended.

The motion of the additional defendant on the counterclaim, National Mediation Board, to dismiss the counterclaim is granted, and the counterclaim is dismissed with prejudice. As agreed at the time of oral argument, the stipulation of the parties barring self-help by Local 851 is ORDERED continued for 10 days from the date of entry of this decision and order. The stipulation will then expire unless continued by further stipulation of the parties or unless Seaboard renews its motion for a preliminary injunction.

The Clerk is directed to mail a copy of the within to all parties.

So ordered.